# EXHIBIT A



ZUCKERMAN
SPAEDER

William W. Taylor, III
PARTNER
Zuckerman Spaeder LLP
wtaylor@zuckerman.com
(202) 778-1810

November 15, 2021

**VIA E-MAIL**

Russell B. Christensen
Assistant Chief Counsel for Litigation and Information Law, AGC-400
The Office of the Chief Counsel
Federal Aviation Administration
800 Independence Ave, SW
Washington, D.C. 20591

    **Re:    U.S. v. Mark A. Forkner; Touhy regulations**

Dear Mr. Christensen,

    Along with David Gerger, we represent Mark A. Forkner for the purpose set out in this letter. Mr. Forkner is facing an indictment brought by the Department of Justice in the Northern District of Texas. *See United States v. Forkner*, 4:21-CR-00268-O (N.D. Tex.). The charges focus on the role that Mr. Forkner played during interactions between Boeing personnel and the Federal Aviation Administration (the "FAA" or the "Agency").

    We write to request that the Agency not prevent Mr. Forkner's counsel from obtaining evidence material to his defense.

    In order for Mr. Forkner to receive a fair trial, it is imperative that his attorneys have access to (1) current and former FAA personnel who possess exculpatory information and may be called as witnesses for the defense, and (2) documents in the FAA's possession that may be introduced as part of the defense case. Mr. Forkner's counsel needs immediate access to the relevant witnesses and documents. And as you are aware from prior communications with our co-counsel, Mr. Gerger, such access has been impossible due to the FAA's invocation of Department of Transportation ("DOT") regulations restricting FAA employee discussions of matters which occurred during their employment. *See* 49 C.F.R. § 9 ("*Touhy* regulations").[1] We ask the Agency to remove that obstacle by November 19.

---

[1] *See Touhy v. Ragen*, 340 U.S. 462 (1951).

Russell B. Christensen
November 15, 2021
Page 2

Time is of the essence for Mr. Forkner.  Trial is currently set to commence on February 7, 2022.  Pretrial motions are due on December 15, 2021.  Without access to the information we are seeking from current and former FAA personnel and from the Agency in advance of this deadline, and well in advance of trial, Mr. Forkner will not have an opportunity to prepare and present a defense, and he will be deprived of his right to a fair trial.  The *Touhy* regulations do not require, and should not be applied, to cause that result.

The FAA should help ensure that the Court and the jury can make fair, informed decisions in the criminal proceeding.  This is not a situation in which private litigants threaten to entangle the FAA in a dispute unrelated to the Agency's core mission.  The FAA played a central role in the events alleged in the charges against Mr. Forkner.  The Agency should have no interest in invoking internal housekeeping rules to impede the administration of justice in a criminal case that concerns its interactions with regulated entities and its core regulatory purpose — aviation safety.  The FAA, moreover, like any part of the U.S Government, should do everything possible to uphold the requirements of the Constitution, including a defendant's right to due process of law.

For these reasons and those discussed below, we request the FAA: (1) to exercise its discretionary authority to grant an exception to the *Touhy* process in this case or (2) to authorize access to the witnesses identified in this letter and advise those witnesses that the FAA does not object to their talking with defense counsel and testifying at trial.  At a minimum, and while reserving our rights to seek other relief, we ask the FAA to acknowledge immediately that DOT has no statutory authority to restrict Mr. Forkner's access to former FAA employees — as every court to consider the issue has held.[2]

### Background: The Charges Against Mr. Forkner, and Defense Counsel's Efforts to Obtain Exculpatory Information

Mr. Forkner was indicted less than four weeks ago, on October 14, 2021.[3]  The indictment — which, as noted above, contains numerous allegations regarding the FAA and Mr. Forkner's interactions with the Agency — charges him with making false entries in documents concerning aircraft parts, with intent to defraud, in violation of 18 U.S.C. §§ 38(a)(1)(C) and (2), and wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.[4]  The charges brought under 18 U.S.C. § 38 identify the allegedly false documents as copies of the FAA's FSB Report for the 737 MAX.[5]  More generally, the indictment alleges various facts, including communications with the FAA, relating to software called the Maneuvering Characteristics and Augmentation System ("MCAS"), which Boeing installed on the 737 MAX.  These events have been the focus of

---

[2] In addition to seeking access to witnesses, we also plan to seek documents from the FAA on the same grounds.  We will identify those documents in a separate letter.

[3] *See* Indictment, *United States v. Forkner*, 4:21-CR-00268-O (Dckt. No. 1)

[4] *Id*. at 12–14

[5] *Id.* at 12

1800 M STREET NW, STE. 1000, WASHINGTON, DC 20036-5807  |  T 202.778.1800  |  F 202.822.8106

ZUCKERMAN SPAEDER LLP  |  WASHINGTON, DC  |  NEW YORK  |  TAMPA  |  BALTIMORE

Russell B. Christensen
November 15, 2021
Page 3

extensive Congressional and criminal investigations and civil litigation since the two tragic crashes of 737 MAX aircraft.[6]

Through counsel, Mr. Forkner has sought to protect his rights in every way possible by seeking access to relevant and exculpatory information. Specifically, in March of 2020 — roughly 17 months ago — Mr. Forkner initiated an effort to obtain much of what we are still seeking from the FAA through a Freedom of Information Act ("FOIA") request. The FOIA process has yet to yield a single document.

In an effort to meet the motions deadline and prepare for trial, Mr. Forkner has identified ▮▮▮▮▮▮ former and ▮▮ current FAA employees who possess material, exculpatory information. Current employees ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮, who are ▮▮▮▮▮▮▮, possess exculpatory information regarding ▮▮▮▮▮ Former employee ▮▮▮▮▮▮▮ possesses exculpatory information regarding the FAA, Boeing's interactions with the Agency's Aircraft Evaluation Group ("AEG"), and MCAS. ▮▮ ▮▮▮, the former Acting Administrator of the FAA, has already disclosed such information in his testimony before Congress, which is a matter of public record.

In preliminary conversations with Mr. Gerger, you have indicated that the FAA would enforce the procedures set forth in DOT's *Touhy* regulations, attempt to apply DOT's *Touhy* regulations to former FAA employees, and attempt to prevent FAA employees from offering expert or opinion testimony on behalf of Mr. Forkner.[7] You advised that if Mr. Gerger wanted to speak with FAA employees about their official duties, he could submit a written request. By this letter, we request that you take the necessary action to free the present and former employees from any restriction on providing information to defense counsel. If you decline to do so, please advise us by November 19 so that we may seek the necessary judicial relief.

### Discussion

Under the circumstances presented here — where the federal government has charged our client with crimes based on his interactions with the FAA — the *Touhy* regulations serve no legitimate or constructive purpose. If enforced, they will deny Mr. Forkner his right to a fair trial. We demonstrate below that the Agency has discretion to grant an exception to the application of the regulations and that it should do so voluntarily. If it declines to grant such an exception, it should authorize access to witnesses identified by Mr. Forkner's counsel and advise them that the Agency has no objection to their speaking with his counsel and testifying at trial. Finally, we demonstrate that the Agency must acknowledge immediately that DOT lacks statutory authority to control former FAA employees with *Touhy* regulations and so advise the former employees we identify.

---

[6] *See* The Design, Development, and Certification of the Boeing 737 Max, House Committee on Transportation & Infrastructure (Final Committee Report) (2020).

[7] DOT's *Touhy* regulations apply to the FAA. 49 C.F.R. § 9.3(b).

Russell B. Christensen
November 15, 2021
Page 4

I.        **The FAA can and should grant Mr. Forkner an exception to DOT's *Touhy* process.**

          **A. The regulations authorize the FAA to grant an exception.**

          The *Touhy* regulations permit the granting of an exception to their application so long as two conditions are satisfied.  First, granting an exception must not "interfere with matters of operational or military necessity."  49 C.F.R. § 9.1(c).  And, second, agency counsel must determine that an exception is "necessary to prevent a miscarriage of justice," DOT has "an interest in the decision that may be rendered in the legal proceeding," or the exception is in the "best interest" of DOT or the United States.  *Id.*

          As to the first, permitting Mr. Forkner's counsel to speak with, and procure the testimony of, current and former FAA employees with evidence material to the ongoing criminal proceeding cannot interfere with "matters of operational or military necessity."  Indeed, the events alleged in the indictment, and the issues that will be litigated at trial, have no bearing whatsoever on military matters or the necessary operational functions of the Agency.  As to the second, all three of the factors listed in Section 9.1(c) apply, though one would suffice.

          (1)  Denying, or further delaying Mr. Forkner's access to material witnesses and evidence, which has already occurred, and which undoubtedly will continue to occur if the FAA requires defense counsel (but not DOJ) to navigate the *Touhy* process each time we seek an additional piece of evidence, will result in a miscarriage of justice.

           (2)  The FAA and DOT have a clear interest in a fair trial to determine whether Mr. Forkner or others misled the agency to obtain an inaccurate FSB Report and then used that Report to defraud the airlines that purchased Boeing aircraft.  The FAA has already acknowledged its paramount interest in these matters.  *See* Summary of the FAA's Review of the Boeing 737 MAX at 5, Federal Aviation Administration (Agency Report) (2020) (explaining that because the FAA "has a longstanding commitment to transparency, continuous improvement, and information sharing" the agency has supported numerous reviews and investigations of the 737 MAX's certification).  Beyond its vital regulatory interests, a determination of whether Mr. Forkner committed the crimes charged in the indictment will affect the Agency's interests in other investigations and litigation relating to its evaluation of the 737 MAX.

          (3)  For similar reasons, an exception is in the best interest of DOT.  Every agency of the United States has an interest in assuring that a defendant accused of a crime receives a fair trial, particularly when the alleged crime directly implicates the highest regulatory priority of a federal agency.  Conversely, it would be contrary to the public interest if the Agency applied its housekeeping rules in a manner that hindered the administration of justice and efforts to bring truthful information to light regarding matters of great importance to DOT.  This interest is especially significant given that DOT, whether fairly or not, has already been criticized for failing to act with sufficient speed and transparency in responding to legitimate requests for information relating to the 737 MAX.  *See* The Design, Development, and Certification of the Boeing 737 Max at 234–35, House Committee on Transportation & Infrastructure (Final

Russell B. Christensen
November 15, 2021
Page 5

Committee Report) (2020) (finding that DOT's production of FAA records was "inexplicably slow" and "seemingly incomplete").

The FAA need not be constrained by *Touhy*; its hands are not tied. Rather, it has the latitude to determine, in the exercise of its discretion, that *Touhy* requirements do not apply in this case, where the information possessed by current and former FAA employees is essential to a fair trial.

### B.  The FAA should exercise its authority to grant an exception.

The reasons why the FAA should exercise its authority to grant Mr. Forkner an exception from DOT's *Touhy* regulations in this case are analytically similar but not identical to the reasons which permit the exercise of that discretion in the first instance.  Essentially, none of the purposes of the regulations or the relevant statute are furthered by the FAA's current interpretation of the regulations.  It is not the purpose of DOT's *Touhy* regulations to prevent a defendant in a criminal case from communicating with witnesses who may be essential to his defense.  Similarly, it is not the purpose of the Housekeeping Statute, 5 U.S.C. § 301, and the *Touhy* doctrine to impair a criminal defendant's opportunity to prepare a defense or to create one-sided rules governing pre-trial discovery or the admissibility of evidence.  *See* § 49 C.F.R. 9.7(b) (purporting to limit the capacity in which current and former FAA employees may testify on behalf of criminal defendants, while permitting such employees to testify for the government without restriction and upon request).  Finally, a restriction of the kind now being imposed by the Agency will violate Mr. Forkner's constitutional rights.

### 1.  The Purposes of DOT's *Touhy* Regulations

As set forth in Section 9.1(b) of the regulations, their purposes are to:  (1) conserve the time of employees for conducting official business; (2) minimize the possibility of involving DOT in controversial issues not related to its mission; (3) maintain the impartiality of DOT among private litigants; (4) avoid spending the time and money of the United States for private purposes; and (5) protect the confidential, sensitive information and the deliberative processes of DOT.  49 C.F.R. § 9.1(b).  The first four purposes are of no moment here, and the fifth cannot outweigh Mr. Forkner's right to a fair trial.  None of those purposes are served by denying a criminal defendant evidence material to his defense.

The first purpose is not implicated because getting to the truth of the 737 MAX tragedy cannot be considered a waste of time or a diversion from official DOT business.  In some circumstances there may be good reason to prevent litigants from forcing wasteful expenditure of the time of DOT's employees.  But the events underlying the government's indictment of Mr. Forkner are issues of immense national importance and particularly important to the FAA and DOT.  Moreover, because DOJ has put the FAA at the center of its case against Mr. Forkner, the Agency should not complain of, and Mr. Forkner should not be prejudiced by, concerns about the resources that might be required to adjudicate this matter.  The incremental use of resources that will be required for Mr. Forkner's defense will be negligible compared to those the FAA has

Russell B. Christensen
November 15, 2021
Page 6

already expended in responding to related investigations and assisting DOJ.[8]  The second
purpose similarly has no application, for the ongoing criminal proceeding is not unrelated to
DOT's mission, which it describes as "ensur[ing] America has the safest . . . transportation
system in the world."[9]  Rather, discovering the truth about the 737 MAX's technical features, the
causes of the tragedy, and the failures of private and public sector personnel is central to DOT's
goals.  *Id.*  The third and fourth purposes, which pertain to private civil litigation, plainly have no
relevance in a criminal case initiated by the United States government.

    As for the fifth and final purpose, any concerns about confidential information or the
Agency's deliberative process can and should be addressed in the forum of the criminal case.
Especially given the amount of information that has already been disclosed in this matter,
including through lengthy and intensive public hearings and reports, it is difficult to understand
how this concern could be seriously implicated, let alone how it could outweigh a defendant's
rights to obtain the exculpatory information we have identified.  None of the purposes of DOT's
*Touhy* regulations therefore are furthered by applying them to hinder or block counsel's access to
witnesses or documents.

### 2.  The Purposes of the Housekeeping Statute and the *Touhy* Doctrine

    The purposes of the Housekeeping Statute and the *Touhy* doctrine provide additional
support for our request.  Since the "beginning of the Republic," the Housekeeping Statute,
5 U.S.C. § 301, was intended to give departmental heads authority over "internal departmental
affairs."  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).  By 1958, Congress had grown
"concern[ed] that agencies were invoking § 301 as a source of authority to withhold information
from the public" and, to remedy that problem, it amended the statute to clarify expressly that
§ 301 "does not authorize withholding information from the public or limiting the availability of
records to the public."  *Id.* at 310 (quoting 5 U.S.C. § 301).  Section 301 therefore does not
provide "substantive rules regulating disclosure of government information."  *Exxon Shipping
Co. v. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994) (holding that five agencies violated the
Administrative Procedure Act when they instructed employees not to submit to deposition
because "neither [§ 301's] text, its legislative history, nor Supreme Court case law support[ed]
the government's argument that § 301 authorizes agency heads to withhold documents or
testimony from federal courts").  Rather, it furthers the "legitimate and tidy housekeeping
objective in centralizing [in agency heads] the determinations of when to assert and when not to
assert a privilege."  *N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 873 (5th Cir. 1961) ("[*Touhy*]
carefully avoided the question of the power of the agency head to refuse a proper judicial
demand for the production of the records."); *see also Koopmann v. Dep't of Transp.*,
335 F. Supp. 3d 556, 562 n.1 (S.D.N.Y. 2018) (explaining that neither the amended
Housekeeping Statute nor *Touhy* can be read to suggest that the executive branch may act as

---

[8] Notably, the conservation of employee time for conducting official business has no arguable applicability
to *former* FAA employees, who no longer conduct official business.

[9] The United States Department of Transportation, Mission Statement,
https://www.transportation.gov/about (last updated June 1, 2021).

Russell B. Christensen
November 15, 2021
Page 7

"gatekeeper for the disclosure of government information"); *Alexander v. F.B.I.*, 186 F.R.D. 66, 69 (D.D.C. 1998) (explaining that *Touhy* does not stand for proposition that "an agency head is free to withhold evidence from a federal court").  The Housekeeping Statute and the *Touhy* doctrine therefore do not license agencies to prevent those accused of crimes from accessing materials essential to their defense.

### 3. Constitutional Concerns

Serious constitutional problems would arise if one arm of the executive branch (DOT) prevents criminal defendants from obtaining evidence critical to their defense in a prosecution initiated by another arm of the executive branch (DOJ).  Those constitutional problems fall into two categories: violation of the separation of powers principle and infringement of individual constitutional rights.

As to separation of powers, even assuming *Touhy* authorized agencies to limit a litigant's access to evidence (and it does not), that principle cannot be applied when the government is a party to the proceeding.  *See Alexander*, 186 F.R.D. at 70 (concluding that *Touhy* has no force when the government is a party to the original proceeding); *see also Resource Invs., Inc. v. United States*, 93 Fed. Cl. 373, 380 (2010) ("With near unanimity, . . . courts considering the issue have concluded that, when the United States is a party to the litigation, the reach of disclosure-limiting *Touhy* regulations ends at the courthouse doors.").  For it would "create a significant separation of powers problem" if the United States could limit a litigant's access to material evidence "[w]hen the United States is a party to the litigation."  *Alexander*, 186 F.R.D. at 70 ("[J]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.") (quoting *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953)); *see also Streett v. United States*, 1996 WL 765882, at *4 (W.D. Va. Dec. 18, 1996) ("[*Touhy* may not] be used as a tool by the executive to usurp the judiciary's role in determining what evidence will enter the courtroom" because "[o]ur legal system would not endure long with the opposite rule, where a party to a dispute doubles as the referee."); *Gulf Grp. Gen. Enter. Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 647 (2011) (rejecting *Touhy* invocation because "the judiciary, not the executive branch controls the admission of evidence at trial").

As to individual rights, when an agency stymies a criminal defendant from obtaining material evidence, the agency threatens core principles underlying multiple constitutional rights, including the rights to (1) receive exculpatory evidence in the government's possession, (2) compulsory process, and (3) reciprocal discovery.  *See United States v. Palma*, 2020 WL 6743144, at *8 (E.D. Mich. Nov. 17, 2020) (holding that the right to *Brady* material includes information possessed by civil agencies involved in the criminal investigation even when no personnel from the civil agencies "participated in the decision to charge [the defendant]"); *United States v. Rosen*, 520 F. Supp. 2d 802, 808–10 (E.D. Va. 2007) (explaining that the right to compulsory process includes the principle that even where an agency implements *Touhy* regulations and asserts a valid evidentiary privilege, "the government's interest must give way" if the defendant demonstrates that the witness possesses material evidence); *United States v. Bahamonde*, 445 F.3d 1225, 1228–29 (9th Cir. 2006) (holding that *Touhy* regulation violated

Russell B. Christensen
November 15, 2021
Page 8

defendant's due process right to reciprocal discovery where regulation required defendant to describe the evidence he sought from the agency but failed to demand the same of the government). Indeed, like the *Touhy* regulations invalidated in *Bahamonde*, DOT's *Touhy* regulations impose asymmetric burdens on defendants that tilt the scales in favor of the prosecution. *See* 49 C.F.R. § 9.7(b) (permitting the government to tender an employee as an expert or opinion witness merely upon request, while forbidding "any party other than the United States in any legal proceeding in which the United States is a party" from doing the same); *id.* § 9.7(a), (b) (allowing employees to testify for parties opposing the government only if that testimony is pre-approved by agency counsel, while promising to "arrange for an employee to testify as a witness for the United States whenever the attorney representing the United States requests it").[10]

In sum, the FAA should exercise its discretion to grant an exception to DOT's *Touhy* regulations in this case. Mr. Forkner's trial is rapidly approaching; he has diligently sought relevant evidence from the FAA to no avail; and his defense will be prejudiced and his rights violated if the FAA insists on using housekeeping regulations to bar him from accessing material, exculpatory evidence.

**II.     Alternatively, the FAA can authorize access to the witnesses we have identified.**

For all of the same reasons, and as an alternative to granting an exception under Section 9.1(c), the FAA can provide access to the witnesses and information we have identified, under 49 C.F.R. §§ 9.1(c), 9.5, and 9.7 (empowering agency counsel to pre-approve employee testimony), and it should exercise that authority so that *Touhy*, contrary to its purpose, does not make the FAA the arbiter of what evidence is available to the defense at trial.

Again, the government has brought this case against Mr. Forkner, and it has put the FAA squarely at the center of the allegations contained in the charges. In proceeding with its case, and on an expedited timetable, the government cannot interpose *Touhy* to block, or to delay, Mr.

---

[10] Application of DOT's *Touhy* regulations in this case would also threaten—and may even violate—the protection afforded to attorney work-product and, for related reasons, the defendant's right to counsel. The opinions, judgments, and thought processes of counsel receive heightened protection under the work-product doctrine. *United States v. Nobles*, 422 U.S. 225, 236 (1975). And as the Supreme Court has recognized, where that protection is compromised, attorneys are unable to perform their essential role in our adversarial system. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."). These principles have constitutional implications when the government intrudes on the confidentiality of defense counsel's preparations for trial and trial strategy. *See United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986) (explaining that the government violates a defendant's Sixth Amendment right when it prejudices the defense by knowingly intruding into the attorney client-relationship). DOT's *Touhy* regulations require, however, that defense counsel vet proposed witness testimony with the government before such testimony is introduced at trial. 49 C.F.R § 9.7(b) ("An employee who receives a demand to testify on behalf of a party other than the United States may testify as to facts within [his] personal knowledge, *provided that the testimony be subject to the prior approval of agency counsel.* (emphasis added)). This potential intrusion on the function of defense counsel provides another reason why, under the specific circumstances presented here, the FAA should not put itself in a position to decide whether, and under what circumstances, Mr. Forkner should have access to exculpatory evidence.

Russell B. Christensen
November 15, 2021
Page 9

Forkner's access to exculpatory evidence.  Any such implementation of *Touhy* regulations would constitute an abuse of the Agency's authority and a violation of Mr. Forkner's rights.  *See* 5 U.S.C. § 706(2)(A), (C) (authorizing courts to hold unlawful and set aside agency action found to be arbitrary, capricious, or an abuse of discretion, in excess of statutory authority, or contrary to constitutional rights).

**III.     FAA should immediately acknowledge that DOT's *Touhy* regulations are invalid as applied to former FAA employees.**

Based on your recent communication with Mr. Gerger, we understand that the FAA's current position is that DOT's *Touhy* regulations apply to former FAA employees.  That position is legally untenable, and we respectfully ask the FAA to reverse it. Every court to have considered whether DOT possesses the statutory authority to apply *Touhy* regulations to former employees has concluded that DOT lacks such authority.  *See Koopmann*, 335 F. Supp. 3d at 565 ("[DOT's] *Touhy* regulations are invalid to the extent that they extend to former employees"); *La. Dep't of Transp. & Dev. v. Dep't of Transp.*, 2015 WL 7313876, at *6–7 (W.D. La. Nov. 20, 2015) (holding that DOT acted *ultra vires* when its *Touhy* regulations extended the definition of "employees" to cover former employees); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 917 (E.D. Pa. 1979) (concluding that *Touhy* regulations were invalid as to former employees because § 301 applies to current employees only).[11]  "In short, the text, structure, and purpose of the [relevant statutory authority] all compel the conclusion" that DOT lacks authority to forbid Mr. Forkner's access to its former employees.  *Koopmann*, 335 F. Supp. 3d at 562.

For all the reasons set forth in these well-reasoned decisions (with which the FAA is already familiar), the FAA should acknowledge immediately that DOT's *Touhy* regulations cannot apply to former FAA employees.  If it refuses to do so, the FAA will be exceeding the scope of its statutory power in direct contravention of judicial precedent that resolves this issue.

*     *     *

As each day passes, Mr. Forkner's defense is prejudiced by FAA's failure to grant him access to sources of evidence that he has identified.  So that Mr. Forkner may mount a defense to the serious charges facing him, we ask the FAA to grant an exception to DOT's *Touhy* process for this purpose.  Alternatively, we ask that the FAA authorize access to the witnesses identified.  Finally, and while reserving our rights to seek broader relief, we ask the FAA to acknowledge

---

[11] *But cf. United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (upholding application of *Touhy* regulations to former DOJ employee, without considering whether the regulations were authorized by statute).

Russell B. Christensen
November 15, 2021
Page 10

that DOT's *Touhy* regulations do not control the conduct of its former employees.  Given the circumstances, we request that you provide us with a response promptly, and by no later than November 19.

Sincerely,

William W. Taylor, III

cc:     David Gerger
        Gerger Hennessy & McFarlane LLP
        dgerger@ghmfirm.com
        (713) 224-4400